Thank you, Your Honor. And I old habits die hard. I would prefer to address the court while standing. All right. Good morning. May it please the court. Eric Best of Barnes and Thornburg on behalf of the public watchdogs. May I request five minutes for rebuttal? All right. Please watch your time. Yes, Your Honor. This case concerns one of the most dangerous substances known to mankind spent nuclear fuel, which is being buried at one of the most iconic stretches of coastline in the state of California, San Onofre. As alleged in the complaint in July and August of 2018, the commercial defendants in this case, Southern California Edison and Holtec, lost control of two thin walled metal canisters, each one holding approximately 50 tons of this deadly material. And on these two occasions, while the commercial it's interesting for all these facts, but I'll assure you that we've read your briefs. We know what you got to say. So get to the argument. Why is it we should even have a jurisdiction here? Yes, Your Honor. The district court erred in dismissing the entire case for lack of subject matter jurisdiction because it erroneously concluded that the Hobbs Act covered all three causes of action that are at issue in this appeal. The Hobbs Act. Right, right. And it did so because under our General Atomics versus U.S. Nuclear Regulatory Commission, we said the Hobbs Act is to be read broadly to encompass all final NRC decisions that are preliminary or incidental to licensing. And the holding of that case, Your Honor, the facts and the holding of General Atomics are important to understand that those words. In that case, a licensee had and there was a proceeding in front of the NRC involving a licensee. The parent of that licensee then attempted to get an injunction from the Federal District Court here in San Diego to enjoin that proceeding, finding that it would not be deemed a licensee as well. In that context, where there was a particular proceeding pending before the NRC, this court held that the Hobbs Act required the parent to go before the NRC. The language that this court used in General Atomics, I submit, Your Honor, is not found in Lorien, the case on which it is cited, which it cited for support. And instead. Well, but in Lorien it says, and I quote, in the absence of specific evidence to the contrary, congressional intent, review of orders issued involving preliminary or ancillary to the core issue in a proceeding should be reviewed in the same forum as the final order resolving the core issue. And again, Your Honor, in Lorien, the facts matter. In that case, a petitioner had filed an action in front of the NRC, had filed a petition, brought, was the claim, the petition was not accepted by the NRC, then filed an action in the Court of Appeals. In the Court of Appeals, the NRC took the position that it was not covered by the Hobbs Act, that jurisdiction was not appropriate. The Supreme Court reversed. And in that case said, because there was a particular proceeding, and in that instance, orders that were preliminary to, which an ordinary reading of preliminary is before, or ancillary to, necessarily involved in that proceeding should be covered by the Hobbs Act. But the key, Your Honor, in our view, is that it relates to particular proceedings before the agency. What the Hobbs Act does not say, and what the Supreme Court did not hold, is that any matter touching upon a nuclear power plant at any point in the future somehow relates back to a proceeding that happened several years earlier. And the particular facts of this case demonstrate why that shouldn't be the case. The Hobbs Act, of course, covers particular orders, particular challenges to specific types of orders from certain agencies. And it requires them to be brought within 60 days of the agency's action. In this case, Your Honor, the complaint of harm didn't start occurring until 2018 and 2019. And petitioners should not have been required to predict the future and foresee the negligent operation of the transfer of fuel from the spent fuel pools into these silos. Instead, it was permitted to, it should be permitted to bring a case under the Administrative Procedure Act, as well as state and federal claims against the private defendants, because those matters are not involving a particular proceeding. They're not before a proceeding in the NRC, and they're not ancillary to. You did bring a proceeding before the NRC, correct? Yes, Your Honor. Under these same claims? No, Your Honor, they're different claims. What claims are they? So the claim that was brought in the NRC in late 2019 was that the licensing amendment that was adjudicated by the NRC in 2015 was based on a false premise. The premise was that all spent nuclear fuel would start to be removed and placed in long-term storage in approximately 2025, and all of the fuel would be removed by 2049. That was the assumption in the license amendment proceeding. That was the assumption adopted by the NRC. In that case, which again is not before this court, public watchdogs confronted the agency with the fact that that assumption is true. There is no place in which this spent nuclear fuel will be transferred and delivered to for long-term storage, not by those timelines, and not for the foreseeable future. I'm sorry to take us in an ancillary direction. I'm just trying to get us back to the point here. This is how I see, how I read our General Atomics. When I have this language be read broadly to encompass, then we have that deadly in front of us, correct? Your Honor, that language is in General Atomics, and that statement is there. I would respectfully submit, Your Honor, that that is dicta. The statement to read the Hobbs Act broadly is not, one, it's in derogation of this court's other pronouncements as to how to interpret jurisdictional statutes. Two, it is not consistent or found in Laurian, but this court doesn't need to address that or deal with General Atomics because the holding of General Atomics remains the same and is not impacted by this case at all. I would also point out, Your Honor- You argue briefly at page 34 of your brief that nothing in the Hobbs Act purports to strip federal district courts of jurisdiction to hear disputes involving a private party allegedly involved in the dangerous mishandling of nuclear waste. Where before the district court did you raise this argument? Your Honor, I don't have the citation to the excerpts of record. I don't think you did. Well, Your Honor, I believe we did make the specific argument that the Hobbs Act did not deprive the district court of jurisdiction. Well, I tried to find it and I couldn't find it. And I apologize, Your Honor, that I did not specifically point that out in the briefs, but if what I- Okay, what authority do you have for that position? Well, the text of the I wondered what your authority was. It's the text of the statute, Your Honor. There is nothing in the statute that says a private plaintiff suing a private defendant has its action must be brought in the court of appeals within 60 days- So what's the specific language of the Hobbs Act would lead me to that conclusion? Well, it's- Since you say it's the provision. The provision that says challenges to agency action, agency action must be brought in the court of appeals within 60 days. So it's a challenge to an agency action. That's what the Hobbs Act covers. It doesn't cover lawsuits between private parties. It simply covers where an agency has made a decision, whether it's the NRC or another federal agency, those challenges to those agency decisions must be brought in the court of appeals if they fit within this particular category. It's sort of like proving a negative, Your Honor. I would say there is no case that I can cite to because to my knowledge, no case has held what the district court held below. That is that the Hobbs Act deprives federal district courts of jurisdiction over lawsuits involving private plaintiffs and private defendants. All of the other cases- Sorry. No. I'm just listening you out. I'm trying to figure out what you're saying here so I can put it into my idea. All right. And so- I read your complaint. When I read your complaint, the plain terms of the First Amendment complaint challenges the July 2015 License Agreement and the Certificate of Compliance for the Holotech system. That's what it does. So it seems to me the Hobbs Act covers it. So, Your Honor, the complaint, which spans some 50 pages, makes reference to that amendment and the Certificate Appliance. Why? Because it is part of the historical background and the facts on which plaintiffs would rely to establish both that the NRC has abdicated its regulatory function here and has not protected the public health safety and the environment, and also to establish that the particular actions taken by these defendants did not comply with federal law. Counsel? Yes. You said that you have three causes of action? That are at issue in this appeal. Correct. There was a fourth cause of action and we are not challenging the district court's order. Just so we're on the same page, could you list those three causes of action? Yes. The first cause of action is an Administrative Procedure Act claim in which the NRC is the only defendant. The second is a Price-Anderson Act private, public, sorry, I'm getting the exact words here, public liability action under the Price-Anderson Act, and that's only against the commercial defendants, Southern California, Edison, and Holtec. And the third is a public nuisance claim against the commercial defendants pursuant to California state law. In particular, those last two causes of action have no, are not impacted at all by the Hobbs Act under any reading of the statute or, and frankly, I'm unaware of any case law, and I don't believe anything was cited, in which private plaintiffs could not bring cases against private defendants. And again, your honors. How could I say, if I look at ancillary to or incidental to, how could I say those claims are at least, at the very least, incidental or ancillary to the 2015 License Agreement and the Certificate of Compliance? I would submit, your honor, I think the language in Lorien is preliminary to or ancillary, but, and I would say the preliminary... Well, I'm trying to put, you write it the way you want it. I think it has to do with incidental to, ancillary to, proceeding, and I think those are. So I would submit, your honor, that if that interpretation stands, the district court's interpretation stands, it effectively would be a sweeping and dramatic interpretation of the Hobbs Act that would preclude any claim brought at any point in the future that somehow could be traced back, a line could be drawn back to the previous license being granted by the agency. And that's not what Congress... Well, all I would say is, rather than bringing them to district court, go over there and hit in the NRC, just like you've already done. You've already got that going. That's why I asked you the question. You know how to do it. Well, and again, your honor, our client is entitled to pursue and should, competent counsel needs to be able to advance its cause in potentially different forms. And that's something that this court and other courts have recognized. In this case, we brought the claims, our client brought the claims that it could in federal district court, and it brought the claim that it could in front of the NRC based on the false premise in the licensing amendment, but it can't mix and match. For example, it couldn't bring before the NRC, a public nuisance claim against the commercial defendants. The commercial defendants are not an agency. There's no basis to bring a 2206 petition against the commercial defendants in front of the NRC. And conversely, we couldn't bring a challenge to the process used by the agency in evaluating the license amendment in front of the federal district court, unless and until the agency made a decision. So our position, your honor, is that we've taken the avenues that we had to in order to pursue the claims that were present. And that only came into existence in 2019. And what is the specific injunction that you want, if you could write it? Well, it's unfortunately, your honor, it's changed since this case was filed. Initially, the particular injunction that was filed, the request for injunctive relief was to halt the transfer of spent nuclear fuel from wet pools, where it's been safely held for decades, into these casks, these defective canisters, and to put in this location. And specifically, to require some objective third party to assess the risk. Because up until this point, all of the risk analysis has been done by the commercial defendants and has been simply submitted to the agency for it to review. Our allegation in the complaint is that the agency has not complied with its own regulations, requiring it to directly observe and verify the safety of the procedures. Again, these are the allegations in the complaint that are supported, and it's our position that we should be entitled to proceed on that. At this point, your honor, dozens of these canisters have been buried while this case has been pending. We requested the commercial defendants to refrain from continuing to bury the canisters during the pendency of the case, and they declined. So at this point, there's still about 10 or 11 canisters that we would ask not be moved. Why? Because once they're in the ground, according to what the commercial defendants have said, there's no way to extract them safely. And two, we would ask that the spent fuel pools that exist on the site be required to maintain. And specifically, since the pendency of this case, the commercial defendants have indicated that they are going to destroy those pools, completely demolish them. And that would leave no location on site to transfer spent fuel if there's a leak or some kind of breach into a pool. I thought you said you asked the NRC to do that. We've asked the NRC to do something else. In addition, you've asked the NRC specifically to go back and review the licensing amendment that was granted in 2015 based on a false premise. And there's additional requests for relief in that proceeding. Why hasn't that come within the language of the Hogsack? That petition is pending before the NRC. And that is before the Hogsack. It was before the NRC. And in fact, we filed a petition for judicial review in front of this court. So that matter is proceeding separately from this one. Why is it different? Because in that case, we are simply pointing out that the original decision in 2015 was based on a false premise, as we now know. And it needs to be examined in light of the regulations and the requirements facing the NRC. Whereas what we're trying to protect against in the district court action is an ongoing public nuisance, a anticipatory damage tort that's being inflicted upon our client, as well as the agency's failure to enforce its own regulations and allowing this activity to continue. So there is overlap in some of the relief, but it is not uniform. And I'd submit, Your Honor, the fact that we're in two different forums doesn't mean we have to pick one. I think our position is that we should be entitled to proceed where the law allows. And this court, we're asking simply for the case to be remanded with reversed and remanded so that it can proceed on path. That is to discovery. Counselor, do you want to save any time for rebuttal? Oh, thank you, Your Honor. I had meant to save five minutes and I've exceeded. So thank you. All right. Counselor, are you going to split your time? Yes, Your Honor. Good morning. Justin Heminger from the Justice Department on behalf of the Nuclear Regulatory Commission. The defendant, Apolise, have 20 minutes in total. I will take 10 minutes and counsel for the Song's licensees. Well, Mr. Evans will take the other 10 minutes. Thank you. Thank you, Your Honor. 10 minutes on the clock for Mr. Heminger. All right. Counsel, please proceed. Thank you, Your Honor. Again, Justin Heminger on behalf of the Nuclear Regulatory Commission. And we have three points to make this morning. And they follow up on points that Judge Smith has touched on. The first that I wanted to highlight is that public watchdogs, this is not it. Let me put it this way. The district court correctly dismissed the single APA claim against the commission in this case. But this is not the only opportunity that public watchdogs has for judicial review. In fact, as counsel for public watchdogs mentioned, there is a pending petition for review that this court will hear later this year that relates to a citizen petition that public watchdogs filed with the commission raising safety issues at the Song's facility. Now, that process, and that proceeds under 10 CFR 2.206. That process, the citizen petition process, is a commonly used and accepted way to bring safety issues to the commission's attention for the commission to address those concerns and then to provide an opportunity for judicial review under the Hobbs Act. So that would be our first point. Our other two points are that the district court has correctly dismissed the APA claim here, either under the Hobbs Act or on another grounds, independent grounds, which has not come up yet today, the Heckler v. Cheney rule of unreviewability. So those are our three points. So if we, as long as you're there, so if we were to say that the other agency actions incidental to the license amendment and the certificate of compliance, would we need to reach that other reviewability decision? No, your honor. When you refer to, you would not need to reach that. That's the Heckler v. Cheney rule. Right. That's what I thought. I just wanted to make sure that I got that right. Your honor, we agree that the allegations are serious. We agree that there have been safety issues at the Songs facility. We did not respond in any answer to those allegations. And in an APA case, that would be record review and there would be a record of the decisions that the commission has made at the Songs facility. We would not, we certainly would not characterize them as frivolous allegations. Well, how do you respond to Council's arguments that the very case we cite, which is the one we've got to deal with here, the General Atomics v. U.S. Nuclear Regulatory Commission case does not apply to these particular issues? How do you respond to that? Your honor, I believe their position is that the language about the scope of the Hobbs Act is dicta. We would say that that language describing the Hobbs Act as having a broad reach is central to the court's holding that in that particular case, the action was subject to the Hobbs Act. And therefore, this court dismissed the district court's action or affirmed dismissal. And the fact that these arise after the 60 days, that's his next point. Right, your honor. So, uh, it doesn't work under the Hobbs Act to simply say that anything that happens after 60 days somehow is insulated from the Hobbs Act. I'm sure you can appreciate the problem with that. Your honor pointed out that the amended complaint talks at length about the compliance because those are primary actions that the commission took to authorize the decommissioning and fuel transfer storage activities at the songs facility. So at bottom, what public watchdogs is concerned about is what the commission has approved through its normal regulatory processes. And those actions are subject to the Hobbs Act. And so you can't come in years later and complain about the way that the commission is allowing those authorized activities to complain about. So I just want to be sure, are you saying that in the current proceeding before the ninth circuit, the issues that they raised here are being raised there? Your honor, I would. I don't want to characterize it as exactly the same, but our position on that would be that the plaintiff is the master of their complaint, and they are also the master of their petition. So public watchdogs has certainly followed these issues. This lawsuit before this court is the third of four lawsuits that public watchdogs has brought. My understanding is there are in fact two citizen petitions. There's one that they filed and the commission has denied, and that's on petition for review before this court will be cured later this year. But there's a, I believe that public watchdogs has now submitted a second citizen petition to the commission. So public watchdogs certainly has the opportunity to raise whatever issues it believes should be brought to the commission's attention. On my review to answer your honor's question as best I can, on my review of the citizen petition, there are some sentences from that that are copied and pasted from the amended complaint. So certainly there is some overlap. I do think that public watchdogs is focusing on a different concern that they have in their citizen petition. But our position is that they can't bifurcate. That's the problem that says that the Hobbs Act is meant to address. So unless the court has a split of time, given the split of time and the split issues, it's hard to know exactly what to question next. But I think the other questions I have are for the other counsel. Fair enough, your honor. If the court has no further questions, we would ask the court to affirm the district court's judgment on the single claim against the commission. All right, thank you, counsel. So 12 minutes and 50 seconds. Never mind. We'll just go with 10 minutes for now. I'm willing to cede the rest of my time, since the clerk's having trouble with the clock. Let's just do 12 and get going. Can't hear you. You're on mute. You have to get off mute. He's not speaking. Could you say something, Mr. Evans? Yes, ma'am. All right, we can hear you. Thank you. Good morning. I'm Jim Evans of Alston and Bourbon. I represent the private appellees in this action, and may it please the court. The district court correctly dismissed the action and denied the issuance of an injunction for the reasons stated in our brief. There are, however, several areas that we'd like to address briefly in response to the arguments made most recently in Mr. Best's reply brief. I do think it important, though, for a moment to reflect on the gravamen of this action, which is a challenge to the actions, final orders, certifications, regulations, and discretionary decisions of the NRC, an independent body vested with exclusive responsibility for licensing and regulating civilian use, possession, and storage of radioactive materials. You aren't suggesting that those decisions should not be challenged, are you? Not at all. It's where they should be challenged is the first issue that this court must confront. Should those decisions, was planned properly before the district court in challenging those decisions. However, they were fled, or should original jurisdiction have been followed in the circuit court of appeal, which I point out, they brought two separate actions in this, before this tribunal. One, a petition for writ of mandate seeking the very same injunction that they seek here, a suspension of all activities at songs, and then they now appeal or sought review of the denial of the first 2.206 petition. So there's yet another matter that will be heard by the Ninth Circuit. And I think Judge San Martino got it right when she pointed out to Mr. Best, what am I supposed to do here? What happens if I make a decision and the Ninth Circuit makes yet another decision? And then the NRC makes yet another different decision. Isn't that the reason that the Hobbs Act vests in the circuit court's original jurisdiction? And that is precisely one of the reasons. But counsel, what's your response to opposing counsel's position that the Hobbs Act does not apply to private entities? My position is we need only look at the truckload of cases involving the Hobbs Act and private parties to answer that decision. I point the court to Macias versus Keir McGee Corporation. That was an action involving a private party in which the district court held that the action against Illinois was an attack on the NRC's decision to transfer authority over licensing and was therefore foreclosed by the Hobbs Act. We had a similar result in Simmons versus Arkansas Power and Light. That was an Eighth Circuit case from 1981 where the district court ruled that it lacked jurisdiction to hear claims against the private defendant because of the exclusive jurisdiction under the Hobbs Act. Leeson versus Louisiana Power and Light, a Fifth Circuit case, 1981, ruling district court without jurisdiction to hear challenge to a private defendant's construction of a nuclear generator. Conacher versus Hendry, City of West Chicago versus NRC. There are just a plethora of cases involving private parties where the Hobbs Act control from the courts, the jurisdiction of the Hobbs Act was exclusive and the courts have recognized as much. And I don't think a party should be rewarded through artful pleading saying, wait a minute, I'm going to challenge those NRC licenses and those discretionary actions and all the things, decisions that the NRC has made by naming a private party. Then I escape the review of the Hobbs Act and then the party creates the potential for quality of inconsistent decisions and inconsistent review. And that is not what the Hobbs Act contemplates. Here the district court properly concluded that it lacked jurisdiction under these circumstances. And I think a short review of the claimant's own allegations show that they're attacking the license and they're attacking the discretionary decisions. I point the court to their first amendment complaint. The NRC has all but advocated its regulatory and supervisory responsibility. That's an attack on the NRC and its decision-making. Paragraph 10, the NRC has an obligation to ensure the safe and effective storage of spent fuel and to include the public in the process. Again, at paragraph 33, the NRC refuses to independently review recommendations from the sum of defendants. That's an attack on the NRC and how it's doing its business in following Congress's mandate to, as an independent agency, to safeguard the use of nuclear materials. But there's more. I think I understand your argument on there, unless Judge Rawlinson wants you to go through more cases. What I'd like to do is I'd like to go to the public nuisance claim and the fact that the district court found it was preempted by the Atomic Energy Act. Are you talking about field preemption or conflict preemption? Field preemption, but a very specific field preemption. It's not of all things, but of all things pertaining to nuclear safety. No one can really dispute the fact that the many courts, including our U.S. Supreme Court, have said that the ADA reserves and occupies the entire field of nuclear safety, and that's what we're talking about. But just a minute. You would agree with me that some public nuisance laws are valid in some circumstances, wouldn't you? Well, I suppose there are many circumstances where public nuisance laws would be valid. I'm wondering if we're not dealing with some form of conflict preemption here. Well, I think you are insofar as the Price-Anderson Act, and remember, the Price-Anderson Act, Plano's brought a claim under the Price-Anderson Act, a public liability act. And remember that the law, and the cases are many, say that if someone desires compensation arising out of a nuclear incident, that they are relegated solely to the Price-Anderson Act. Now, the Price-Anderson Act, by statute, says we look to the substantive laws of the state unless they're in conflict with the Price-Anderson Act or with other federal laws or statutes. So what the Price-Anderson Act did in effect, it said, we're going to preempt all state claims. We're going to subsume them under our statute. But there is no Price-Anderson Act claim here, which is the most important point. The Price-Anderson Act claim requires several things. I'm sorry. Counsel, we can't see you over there. Yeah, I was going to say, get over there in front of us. I know you like to wander around, give the jury the business, but you're in front of us. I'm an old trial lawyer, Your Honor, and it just happened. I know your problem, and I expect those other two good lawyers do too, but get there so we can see you. Go ahead. Of course. My apologies. The Price-Anderson Act, and this is beyond dispute, it requires, by statute, several things. First, it requires a nuclear incident. There hasn't been one here. The most plaintiff can allege is, well, there's an imminent nuclear disaster. So that doesn't constitute a nuclear incident. Two, you have to have, folks, a release that's in excess of the federal dose. There's no allegation that there's been any release of radiation here. I've read your brief on this. I want to go to another issue. The district court said that the plaintiff failed to adequately allege its public nuisance claim under California law. Now, it seems to me that in their reply brief, and I'm reading from what they say at Gray Brief 32, if allowed to proceed with its public nuisance claim, it will show that, unlike the public at large, it has been forced to expend significant resources combating private defendants' public nuisance by participating in songs, public engagement panels, participating in proceedings before the California Public Utilities Commission, and filing petitions before the NRC. Is that enough to allege a specific injury under California law? It isn't. And again, I've come back to the Price-Anderson Act. Why? And I respect, because the only claim one can bring for personal injury or injury to property by virtue of the preemptive effect of the Price-Anderson Act is a public liability act under the Price-Anderson Act. In fact, our US Supreme Court even noted that the Price-Anderson Act had a rather unique preemption provision in the statute. And so if one wants to sue, certainly you could sue based upon a theory of public nuisance, but you've got to have the basics. The jurisdictional prerequisites, which Berg and O'Connor taught, is the nuclear incident, exposure in excess of the federal dose, and physical damage. And I stress that. Physical damage to persons or property. And without that, there is no claim under the Price-Anderson Act, and there is no claim under California's nuisance laws. So they could never state a claim under California's new public nuisance laws in the absence of the jurisdictional predicates. The release of a nuclear incident, in excess of the federal dose, and damage to persons or property. So I think there's really not a lot to talk about when it comes to the issue of public nuisance. And I would direct the court to In re Hamford Nuclear Reservation. This court, this circuit said, every federal circuit that has considered the appropriate standard of care under the PAA has concluded that nuclear operators are not liable unless they reach federally imposed dose limits, which is an allegation, thank goodness, the plaintiff can't make, because there hasn't been a nuclear incident. So we can talk about public nuisance, but there's really not much point to it unless it falls under the Price-Anderson Act, and unless those jurisdictional prerequisites have been satisfied. I think the other point is, I've exceeded your time. I've exceeded my time. Thank you, Your Honor, and I appreciate everybody. Thank you. Thank you, Your Honor. I'll pick up where Mr. Evans left off. Public watchdogs is not seeking compensation. So the cases and the authority that is cited for a requirement of an actual injury to state a claim under the Price-Anderson Act, or under California law, are simply inapplicable. We are seeking injunctive relief. And while injunctive relief would be available if there was an actual injury, it certainly could be available as an anticipatory nuisance, which is a well-established doctrine that has been accepted by the courts for over 100 years. With regard to cases that Mr. Evans cited that involve private parties, I would simply refer Your Honors to the reply brief on page 9 and 10. Each one of those cases is dealing with a licensing or an amendment proceeding. And again, public watchdogs in this case is not bringing a licensing or amendment challenge. Yes, the fact that the NRC granted a license is part of the factual background and the predicate, but that is not the grommet of the claim. Can I ask you one quick question? Yes, Your Honor. Basically, your standing is based on one person. Given the dire predictions and the nature of your case, the state would seem to me the most interested party in this proceeding, given the serious nature of what you're alleging. I can tell you, Your Honor, that there have been discussions between our client and representatives of the state. We have not formally filed a notice asking the state of California to intervene. I would need substantially more time for Your Honor to give you the background of the state proceedings involving this matter. There are several, and this matter being the operation of San Onofre. And so, specifically in this case, we have not requested the state of California to intervene. Can I ask you one more question? Since you're not asking for money, which is usually the hang-up in settlements, and you're asking for some form of deduction, have you made any effort to try and negotiate with your adversary an injunction that might be satisfactory? Yes, Your Honor. We have several times engaged in discussions with our opponent, both in the district court requesting that simply a pause in the transfer and the burial of fuel take place during the pendency of the case, as well as before this court with a mediator. The court's mediator spoke with us, and that's all confidential, obviously, what was said, but we have explored those opportunities. But I think, as Your Honor points out, we are at loggerheads because, from a plaintiff's perspective, it is an ongoing threat to public health and safety that is ongoing, and we believe it is being caused. We believe we can prove that it's being caused by their activities, and without speaking for the defendants, they disagree. And so, there's not much opportunity for a mediated settlement, although we did try. May I ask you why it's so important to your client to be in district court? I'm sorry, I could not hear you, Your Honor. Could you repeat the question? I said, why is it so important to your client to be in district court? Well, Your Honor, our client is interested in pursuing the claims that were raised, and as I tried to articulate before, the public nuisance and the Price-Anderson Act claim cannot be brought before the NRC. The only place to bring that is in the federal district court. It's not cognizable here, and frankly, the Administrative Procedure Act claim is something that can only be brought in the district court based on the facts and the NRC, but as I pointed out, it's on a different theory. That is that the license amendment was predicated on a false assumption. All right, I understand. Thank you, counsel. Thank you to all counsel for your helpful arguments in this challenging case. The case just argued is submitted for decision by the court that completes our calendar for today, and we are on recess until 9.30 a.m. tomorrow morning. Thank you, Your Honor.
judges: Rawlinson, N.R. Smith, Korman